UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARTHUR PALMER,

                             Plaintiff,

                                                                   Case # 17-CV-6260-FPG

v.

                                                                   DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

Arthur Palmer brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 16. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On January 5 and 6, 2016, Palmer applied for DIB and protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[1] 256-63. He alleged disability since November 13, 2014, due to chronic obstructive pulmonary disease ("COPD"), emphysema, and lung nodules. Tr. 286. Palmer later amended his alleged disability onset date to July 9, 2015. Tr. 279. On September 15, 2016, Palmer and a vocational expert ("VE") appeared and testified at a hearing

---

[1] References to "Tr." are to the administrative record in this matter.

1

before Administrative Law Judge Jennifer Gale Smith ("the ALJ"). Tr. 79-117. On October 12, 2016, the ALJ issued a decision finding that Palmer was not disabled within the meaning of the Act. Tr. 11-23. On February 21, 2017, the Appeals Council denied Palmer's request for review. Tr. 1-7. Thereafter, Palmer commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.    The ALJ's Decision**

The ALJ's decision analyzed Palmer's claim for benefits under the process described above. At step one, the ALJ found that Palmer had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 13. At step two, the ALJ found that Palmer has the following severe impairments: COPD, asthma, lung nodules, emphysema, dyspnea with exertion, hearing loss, and obesity. Tr. 13-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 14-15.

Next, the ALJ determined that Palmer retained the RFC to perform light work[2] with additional limitations. Tr. 15-20. Specifically, the ALJ found that Palmer can have only occasional exposure to respiratory irritants like dust, odors, fumes, gases, and extreme hot and cold temperatures; cannot climb ladders, ropes, or scaffolds, or balance, kneel, crouch, or crawl; can occasionally climb ramps and stairs and stoop; cannot work in an environment with greater than moderate noise, but can hear and understand simple oral instructions and communicate simple information; and has an unlimited ability to stand, but cannot walk longer than 10 minutes at one time. Tr. 15.

At step four, the ALJ relied on the VE's testimony to determine that this RFC prevents Palmer from performing his past relevant work. Tr. 20. At step five, the ALJ relied on the VE's testimony to determine that Palmer can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 21-22. Specifically,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the VE testified that Palmer can work as a gate guard, merchandise marker, and ticket taker. Tr. 22. Accordingly, the ALJ concluded that Palmer was not "disabled" under the Act. Tr. 22-23.

**II.     Analysis**

Palmer argues that remand is required because the ALJ (1) improperly weighed the medical opinions, which rendered the RFC unsupported by substantial evidence; and (2) erred when she relied on VE testimony in response to a hypothetical question that did not account for all of his limitations. ECF No. 13 at 12-22. These arguments are addressed in turn below.

**A.      First Argument: Improper Evaluation of Medical Opinions**

Palmer asserts that the ALJ improperly evaluated an opinion from Nurse Practitioner Carrie Goodrich that her treating physician Aaron Garber, M.D. co-signed. ECF No. 13 at 12-21. Specifically, Palmer asserts that the ALJ should have given this opinion greater weight instead of relying on the opinion of consultative examiner Kalyani Ganesh, M.D. *Id.* Palmer contends that, because the ALJ improperly evaluated these medical opinions, the RFC assessment is not supported by substantial evidence. *Id.*

**1.      Evaluating "Other Source" Opinions and the Treating Physician Rule**

When the SSA decided Palmer's case, its regulations defined nurse practitioners as "other sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d) (effective Sept. 3, 2013 to Mar. 26, 2017). The regulations indicated that, in addition to using evidence from "acceptable medical sources," the SSA "may also use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work." *Id.*

As an "other source," a nurse practitioner's opinion is not entitled to controlling weight. *Id.*; *see also* S.S.R. 06-03p, 2006 WL 2329939, at *1-2 (S.S.A. Aug. 9, 2006); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (citations omitted). Nonetheless, "other

5

source" opinions are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. An ALJ must weigh an "other source" opinion based on the factors set forth in the regulations[3] and should "explain the weight" given to that opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning." *Id.* at *6.

"When a treating physician signs a report prepared by a nurse practitioner . . . , the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272 GLS/ESH, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014). The "treating physician rule" instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given "controlling" weight, the ALJ must consider several factors in determining how much weight it should receive. The ALJ must consider

---

[3] Those factors include whether the medical source examined the claimant; the length, nature, and extent of any treatment relationship, and the frequency of examination; whether the opinion is well supported and explained; how consistent the opinion is with the record as a whole; whether the medical source is a specialist in the area at issue; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

6

"the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 2. NP Goodrich and Dr. Garber's Opinion

On September 8, 2016, NP Goodrich completed a Medical Source Statement, which Dr. Garber signed as the "supervising physician," that evaluated Palmer's impairments and ability to work. Tr. 446-48. NP Goodrich indicated that she treated Palmer since March of 2014. Tr. 446. She opined that he could sit and stand for 10 minutes at one time before needing to change positions; could sit, stand, and walk less than two hours total in an eight-hour workday; and needed to be able to shift positions at will. Tr. 446-47. NP Goodrich also opined that Palmer could frequently lift less than 10 pounds; occasionally twist, stoop, bend, crouch, and squat; and could never climb ladders or stairs. Tr. 447.

NP Goodrich indicated that Palmer would need to take unscheduled, 10-minute breaks every 10 minutes and that he would be off task more than 20% of an eight-hour workday. Tr. 448. She also opined that Palmer's impairments are likely to produce "good" and "bad" days and that he is likely to be absent from work more than four days per month. *Id.* NP Goodrich noted that temperature extremes, dust, fumes, gases, and hazards will affect Palmer's ability to work. *Id.*

### 3. The ALJ's Evaluation of NP Goodrich and Dr. Garber's Opinion

The ALJ summarized the opinion set forth above and recognized that it was a joint opinion from NP Goodrich and Dr. Garber. Tr. 18-19. The ALJ noted that "[i]f Dr. Garber were still

7

[Palmer]'s treating primary care provider," his "opinion would normally be given controlling weight" if it "was supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [Palmer]'s case record." Tr. 19 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); *see also* Tr. 85-86 (Palmer's testimony that he had not seen Dr. Garber since 2008). Palmer asserts that this alone requires remand, because "Dr. Garber was clearly involved and knowledgeable of [his] treatment through the relevant period" and frequently signed off on NP Goodrich's treatment notes. ECF No. 13 at 16-19.

The ALJ was entitled, however, to consider the treatment relationship between Palmer and Dr. Garber when she evaluated Dr. Garber's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the ALJ may consider the length, nature, and extent of the treatment relationship and the frequency of examination). Even if the ALJ considered Dr. Garber to be Palmer's current treating physician, she would still have to find his opinion supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other record evidence before she could afford it controlling weight. As discussed below, however, the ALJ offered several good reasons indicating that NP Goodrich and Dr. Garber's opinion did not meet this standard.

The ALJ found, for example, that Palmer's testimony, which he provided just a few days after NP Goodrich and Dr. Garber issued their opinion, contradicted their assessment of his work-related limitations. Tr. 19. For instance, NP Goodrich and Dr. Garber opined that Palmer could stand and sit for only 10 minutes at one time and for two hours total in an eight-hour workday, but Palmer testified that he "can stand all day in one spot" with a break every one or two hours and that his ability to sit is fine. Tr. 19, 90, 92, 94. They also opined that Palmer could only lift and carry less than 10 pounds, but Palmer testified that he could lift and carry up to 10 pounds. Tr. 19, 92. Furthermore, they opined that Palmer could never climb stairs, but he testified that, although

8

it makes him winded, he goes up and down 16 stairs three or four times a day to let his dogs out. Tr. 19, 91-93.

When the ALJ weighs a medical opinion, she can consider other factors that "tend to support or contradict" the opinion, including that the claimant's testimony revealed a greater degree of functionality than the medical opinion reflected. *See* 20 C.F.R. 404.1527(c)(6); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (summary order) (the ALJ did not violate the treating physician rule where the plaintiff "admitted to a greater degree of functionality" than that found by his treating physician and the ALJ credited the plaintiff's testimony that he could lift 35 pounds instead of 10 pounds as opined by his treating physician).

In fact, the ALJ's RFC assessment is consistent with Palmer's testimony in many ways. Palmer testified that he could lift and carry up to 10 pounds, which is consistent with light work. Tr. 15, 92; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b). Palmer also testified that he could stand all day but could only walk short distances for 10 to 15 minutes at a time. Tr. 90-92. Accordingly, the RFC indicates that Palmer "is not limited in standing," but that he "should not be required to walk longer than 10 minutes at a time." Tr. 15. Palmer testified that he can climb stairs but it makes him short of breath, so the RFC precludes him from climbing ladders, ropes, and scaffolds and limits him to only occasionally climbing ramps and stairs. Tr. 15, 91-93. Palmer also testified that cold weather, dust, and other irritants affect his breathing, and the RFC limits him to only occasional exposure to respiratory irritants like dust, odors, fumes, gases, and extreme hot and cold temperatures. Tr. 15, 93-94. Palmer testified that he has ringing in his ears and difficulty hearing when there is background noise, and the RFC restricts Palmer to a "moderate" noise environment. Tr. 15, 94-95.

The ALJ also discounted NP Goodrich and Dr. Garber's opinion that Palmer could not work even at a sedentary level, because his "pulmonary function testing has shown him to have only a mild or moderate obstruction." Tr. 19 (referring to Tr. 366, 437, 438-40). In accordance with the SSA's regulations, the ALJ was authorized to reduce the weight afforded to that opinion because it lacked consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ also discounted several of NP Goodrich and Dr. Garber's assessed limitations because she found them unsupported by objective evidence and based solely on Palmer's subjective complaints. Tr. 19. Specifically, the ALJ rejected their opinion that Palmer needed daily, unscheduled, 10-minute breaks every 10 minutes because she found it "based solely on [Palmer]'s subjective report, rather than on any objective findings." *Id.* She also rejected their opinion that Palmer would be off task more than 20% of an eight-hour workday, because there was no indication that they "ever performed any testing of [Palmer]'s attention and concentration to support the conclusion." *Id.* Finally, the ALJ rejected their opinion that Palmer would be absent from work more than four days per month because she found it "purely speculative and not based on any documented observation or evaluation." *Id.* The ALJ was entitled to discount NP Goodrich and Dr. Garber's opinion for these reasons, because the SSA's regulations authorize her to discount an opinion that lacks support, "particularly medical signs and laboratory findings," and is not well explained. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)

Lastly, the ALJ discounted NP Goodrich and Dr. Garber's opinion because she found it inconsistent with consultative examiner Dr. Ganesh's opinion. Tr. 19 (referring to Tr. 435-37). As mentioned previously, the ALJ is entitled to discount an opinion based on its lack of consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Moreover, "[i]t is

10

well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

Here, Dr. Ganesh opined that Palmer has no gross physical limitations as to sitting, standing, walking, or using his upper extremities, but that he should avoid known respiratory irritants. Tr. 437. The ALJ indicated that he gave this opinion the "most weight" and found it "consistent with an ability . . . to perform at least light exertional work with some environmental restrictions." Tr. 18. Although the ALJ relied heavily on Dr. Ganesh's opinion, she arrived at an RFC that is *more* restrictive then Dr. Ganesh's assessed limitations. Consistent with Dr. Ganesh's opinion, the ALJ limited Palmer to light work where he avoids respiratory irritants; however, she further restricted him to only occasionally climbing ramps and stairs and stooping, and precluded him from climbing ladders, ropes, or scaffolds, or balancing, kneeling, crouching, or crawling, working in an environment with greater than moderate noise, and walking longer than 10 minutes at one time. Tr. 15.

For the reasons stated, the Court finds that the ALJ properly evaluated NP Goodrich, Dr. Garber, and Dr. Ganesh's medical opinions and that the resulting RFC determination is supported by substantial evidence.

**B.  Second Argument: Improper Reliance on VE Testimony**

Palmer also argues that the ALJ's step five finding is not supported by substantial evidence because she posed an incomplete hypothetical question to the VE. ECF No. 13 at 21-22. Specifically, Palmer asserts that the ALJ's hypothetical question to the VE was incomplete because it was based on an improper RFC determination, as discussed above. *Id.*

At step five, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). An ALJ can make the step five determination by eliciting VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted).

For the reasons stated previously, the Court finds that the ALJ's RFC determination is supported by substantial evidence, specifically Palmer's testimony, the record evidence, and Dr. Ganesh's opinion; thus, any additional limitations were unwarranted. After reviewing Palmer's hearing transcript, the Court finds that the hypothetical questions posed to the VE adequately reflected the RFC determination and that the ALJ was entitled to rely on the VE's responses. Tr. 101-02. Accordingly, the ALJ did not err and her step five analysis is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 23, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court